I am splitting my time with the Petitioners for the Environmental Organizations. I will be arguing for 11 minutes. My colleague will be arguing for 9, but I am reserving 3 for a moment. FERC's interpretation of the duty to act under Section 401 is unsupported by the statute and case law. A state waives its authority to act only where it fails to act or refuses to act on a certification request within one year. Here, the State Board did neither. FERC's findings are unsupported by the evidence, and they are inequitable. While hydroelectric projects often require significant environmental review, the intent of Congress was not to hamstring state review. In court in S.D. Warren, we recognize that 401 provides powerful authority to the state to ensure that, quote, no state water pollution control agency will be confronted with a federal complaint by an industry that has built a plant without consideration of water quality requirements. That is exactly what would happen here if the court were to uphold FERC's orders, because the plant built before 401 or any of California's modern water quality standards were adopted. It's important for me to say that the goal of the State Board is not delay. The goal is to bring these projects up to date with modern water quality standards because they are operating under annual licenses that can be developed decades ago. Well, counsel, when you say the goal is not to delay, when you constantly permit these withdrawals or you've agreed to these withdrawals and resubmissions, and they happen five and six times, why isn't that the kind of delay that 401 was meant to make sure didn't happen? Because in this case, the state was clear that it requires CEQA review in order to examine the water quality impacts of a project. Congress put no limits on the information that a state can require for purposes of assessing a certification. It did put a limit on the amount of time that it had to consider it, which is a year. Correct. And here the State Board was poised to delay. It told each of the applicants, we will deny your certification request if you don't complete CEQA by the end of the year. That was told to each applicant. You could have done that, right? Correct. We could have. Why isn't that the preferred course, to take action to deny it without prejudice, as opposed to agreeing to this circumstance where there's continual withdrawals and resubmissions? Your Honor, fairly read, the emails from the staff at the State Water Board reflect a regulator simply trying to preserve its authority using a mechanism that they understood applicants prefer, but more importantly, that FERC and EPA accepted. They were ready to deny the requests, and in this case, the evidence is extremely thin of a functional agreement. If I may? Let me just try to get further clarification on that question, Judge Hammond. I'm not familiar. I didn't practice in this area, so you're an expert, and I'm just trying to. Is there some reason that a denial without prejudice is bad for either you? I mean, it seems like what's happened is that just, I don't know, practice developed of allowing withdrawal and resubmission as an alternative. But I was just trying to figure out, is there some reason why somebody would prefer the one versus the other? Because they sound basically the same. Correct. Correct, Your Honor. The State Board had no skin in the game. They deny the request. The applicant is free to challenge that denial in State Court. And in no instance did the State Board direct that it had to be a withdrawal and resubmittal. If you look, in the Nevada case, for instance, there are no e-mails. In the Merced case, there is one e-mail that says, please withdraw and resubmit. When you read it in conjunction with the letter given, there's a warning that there will be a denial if you don't. And so it's up to the applicant. The choice was given. They elected to make their choice. If they didn't want to withdraw, they could simply leave it on the books and allow the state to deny it. Well, do you agree if we consider this to be an agreement between the state and the applicant that there would be a problem? I think that the words are super wrongly decided in your view, or does it just not apply to the facts of this case? I think it's in a posit because there was objective evidence of a refusal to act articulated in this contract. If I may, I'd like to state the rule that we think the circuit should adopt for the night, one that honors both purposes of Section 401, not just the clock, but in particular its primary purpose, which is to preserve the authority of the state to protect water quality. The test would be this. For all of a request by an applicant will stop the clock unless there is objective or unequivocal evidence of the certifying authority failing to act or expressing an intention not to act. FERC has no discretion to reject a certification condition. It should have little discretion to look for a waiver. That would be in line with other parts of 401, for which FERC also has limited authority to review state action. The Tacoma case, the D.C. Circuit said, FERC must, quote, merely confirm whether state has facially satisfied the express requirements of Section 401 regarding public notice. The Keating case, the D.C. Circuit said, FERC considers express revocation of certification under A13. This test would align with HOOPA because HOOPA involved a contract that, quote, explicitly required abeyance of all state permitting reviews. It would align with the Second Circuit from 2001 in the New York State D.C. case. That court had said, we hold that Section 401 prohibits a certifying agency from entering into an agreement. Also aligned with the Fourth Circuit, which rejected FERC's efforts to expand HOOPA beyond its limits. On similar emails referencing HOOPA, the Fourth Circuit said, the problem was with the contract. The withdrawals and resubmittals were used to camouflage that contract. On your statutory interpretation, because I gather you, the state, don't care if statute is ultimately interpreted to say, as long as the rules of the road are set and everybody knows and it's not applied retroactively, don't care going forward, right? Because that's denied without prejudice. That question isn't even before the court because we're not relying on that sort of interpretation. But in terms of what we might say about what the statute, either if, let's say, EPA held a deference here, came along and just announced, either going to either grant or deny, there's not going to be this middle ground. I don't think we could say, could we, that the statute interpretation, as long as it was just applied prospectively. So in that sense, then, when you're coming before us, I don't think you should be asking us, Claire, that Section 401 can only be read in this particular way because I don't know what it means and I would probably be inclined to defer to EPA if it came before. As long as it was applied prospectively. So am I wrong about that? You just don't really care if it's all in resubmission or if you just don't want it applied retroactively. Isn't that the method? That's true, Your Honor, and I think in answer to your question, I think the offer to the court was a test you could adopt in rejecting FIRP's test, which is a subjective test. It's basically a gotcha. They want basically a roving license to look for waiver amongst emails from staff. We are talking about hydroelectric projects across the country, natural gas pipelines, where the regulators are working with the community. They pick up the phone. They answer their questions. These things should, to waive authority. That's very powerful that Congress saw fit to preserve to the states. You're right. I'm not sure. It seems like if the applicant withdraws the application, it seems like you have a good argument that you can't grant or deny because now there's no longer an application. So the interpretation that makes more sense to me, but that no one has really presented here, is that the only real concern is if they were coerced to withdraw. So, like, if your client threatens them, we're going to inspect you every day. Something that's a threat unless you withdraw, that would be a concern because now there would be nothing to grant or deny, and it would really be the state's fault because they threatened them. But absent a threat, if the applicant chooses to withdraw or the applicant chooses to force you to grant or deny because they don't withdraw, I don't know why anyone should care. You either have something to grant or deny or you don't, and it's up to the applicant, and the applicant can decide that unless there's coercion. But no one has argued that. So is there something wrong with this idea? No, Your Honor, I think that's correct. I think, and here, we have a regulation. And, you know, I can speak to it now or get to it on rebuttal. I don't know if it's interesting to you or not, but, you know, CEQA can be completed on time. And here, if you look at the intervener's brief on page 50, they specifically say that they saw no compelling reason to do CEQA. That's an astonishing statement for public. They elected not to do it, this statement. So CEQA usually does take quite a long time, though, right? Can you explain a little bit about how you could do it in a year versus in ten years or whatever? What's going on with that? Yes, it can be done, Your Honor. And, in fact, I believe that the review does not have to be completed. Yes, Your Honor, that's correct, that in June 2020, California legislature amended the water law. And that if, you know, the CEQA document is not yet complete, my agency is free to say if that's what it wants to do, which was essentially a reaction to the Hoopa case. But with regard to whether CEQA can be done or not, I would direct you to our brief at footnote 17. And our opening brief is an example of, in the Hoopa case, where there was a subcomponent of their project. They did CEQA in less than a year and received a certification. And, in fact, when the state is the lead agency, so the operating control over the project, when the state agency, there's a regulation in the CEQA guidelines that you have to complete it within a year. The assumption is that you can. Under licensing, they have to submit their notice to FERC that they're going to reapply for a relicense. And they have to do that five years in advance. And then two years in advance, they actually file the application. In all of that time, they are providing studies to FERC, so FERC can do NEPA review. These lead agencies could have used their own documents to do CEQA review and started it earlier. There was nothing preventing them. Again, page 50 of their brief. I realize that our questions and mine in particular are off track. Are there other points that you came, you wanted to make sure that you made before you sat down? I'll make sure you have time for a vote. Thank you. I think I can sit because it's about eight minutes, which allows my colleague to run to a vote. I'm Julie Ganty. I'm for environmental petitioner. I'd like to start by just going back and expanding on a few points that my colleague made. The first is some context for the decisions here, and then statutory interpretation. So the court's decision here will have real world, not just legal consequences. The decision will likely determine whether the federal licenses for three major hydropower projects in California are conditioned on measures the state deems necessary to protect water quality on the affected rivers for the next 30 to 50 years. The record shows that these projects have significant and ongoing impacts to water quality. Yet if FERC's decisions are upheld, it will likely be two generations before the state has another opportunity to condition their compliance with water quality. And then I wanted to turn to the statutory interpretation. So petitioners and FERC appear to have a common understanding of the waiver provision up to a point. So under the waiver provision of Section 401, an applicant's withdrawal of its request within one year ends the state's obligation to act on that request within one year. As FERC says on, I think, page 47 of its brief, the state must have something to act on before it can fail to act. The qualification is just you've left out that as long as the withdrawal is unilateral, that's their view. Correct, that's their view. So their general interpretation is that an applicant's withdrawal removes the state's obligation to act on that request within one year. So the second point that we appear to agree on is that the waiver provision is actor dependent, meaning that waiver occurs only due to the state's failure or refusal to act. I think that's on page 48 of FERC's brief. So FERC's test, though, defies those two common understandings, because under FERC's test an applicant's act in withdrawing prior to one year, even in the absence of a state's failure or refusal to act, can still trigger waiver of the state's authority if there is some evidence that in FERC's opinion shows coordination, the state's coordination in withdrawal. And to, I'm sorry, I forget which justice asked the question, but was HOOPA rightly decided? I think there was a question to that effect. And to the extent that FERC is arguing this is the same test as HOOPA, it's not. And if the court were to accept FERC's test here, it would be establishing a much lower threshold as a basis for finding waiver of the state's very important certification authority. But you probably think HOOPA is wrongly decided, don't you? The rule as we read it in HOOPA is that if the state enters a binding agreement committing it not to timely act within one year, that is a refusal to act within the meaning of Section 401. And that is, I think, a reasonable rule. And I think it's a rule that the Second Circuit followed in New York, too. A binding agreement that either precludes or commits the state not to timely act. But we don't have that here. FERC argues up and down on page 72 of its brief that it did not find and did not rely on any evidence of agreement between the state and the applicants that obligated or otherwise committed the state not to act in a timely manner. And, indeed, the correspondence that FERC relies on and even some of the state regulations it points to show that the state was prepared to act within one year if the applicant didn't withdraw. And that was actually, when you read the correspondence, they do use unfortunate terms like, hey, if you're going to withdraw, can you do it in the next three weeks? But then the follow-up to that is because it's going to take me some time to route this up to my executive director to do a denial without prejudice. And so when you look at that correspondence and line it up against the state regulations that say, under our law, if the environmental review process under the California Environmental Quality Act has not been completed, which here it was the responsibility of the applicants to complete that, if it's not been completed, you will deny the request without prejudice before the federal period expires. And so when you look at the correspondence and line it up with the correct interpretation of the law, it's clear evidence that the state did intend to act in a timely manner. And so FERC's reliance on that correspondence to come to the opposite result, that the state was somehow coordinating in the applicant's withdrawal, so really it had no need to. It's just not a rational interpretation of the evidence before FERC. And so I wanted to just also follow up on one point regarding CEQA. Just as a knock among, I think you had a question in terms of there is a law change, so allowing the state to grant a certification in the absence of a completed CEQA document. And as my colleague said, that law was essentially a response to uncertainty created under FUPA. But the state did not eliminate the requirement for CEQA. Okay, if there's a risk of waiver, you can grant certification in advance of completion of the document, but it left a re-opener so that the state could go back and based on the environmental analysis after it was completed, if it needed to alter the conditions to conform to that analysis, they could do so. So it's not that they decided CEQA was not necessary. They just tried, okay, go ahead. I was just going to ask how that would work with the FERC side of things, though, because I thought that the state requirements go into the permit and then they're sort of set. That's the problem we have now. How would the state reopen it? So under Jefferson TUD, under Jefferson TUD's interpretation of Section 401, once the state issues a certification with conditions, the federal agency must incorporate those conditions without modification into the license. And so there are certifications that include re-opener provisions and basically say if something changes and a different measure is needed to ensure quality or protection of water quality requirements, the state can come in and alter its license. In the license from FERC, it would say that. Correct, correct. And that's because FERC's jurisdiction under the federal part, it essentially shares some of that jurisdiction. The state has mandatory condition and authority under Section 401 of the Clean Water Act. The National Marine Fisheries Service has mandatory condition and authority under Federal Power Act Section 18. So the mandatory conditions, even though it is a FERC license, there are other agencies that under federal law have authority to condition operations. The question I was going to ask, maybe it's better directed to your colleague, but I don't understand why that change in the regulation. Why wasn't the response just to say, okay, fine, we're just going to deny, deny, deny, deny? Whenever we don't have the CEQA process hasn't been completed, why was there this need to write an out that you can grant certification with conditions? I told you we were going to do it if you don't withdraw. We're just going to deny this without prejudice. Final new application, hopefully. Get everything together. If not, we're going to deny it again, and we'll just keep seeing you. It seems to me that's the only response that was needed. Do you look under? I think I would provide a response similar to my colleague in that the water board didn't have any skin in the game in that respect. Whether the applicant wanted to withdraw, which is something FERC accepted for over 20 years, and still, as I said, its interpretation is that if it considers a withdrawal to be unilateral, then that ends the state's obligation to act. And there wasn't that nuance that it's now kind of putting onto that before in its interpretation prior to HOOPA. So if you could achieve the same result and it was a withdrawal or a denial without prejudice, then I think it's unreasonable to think that the state would have, not having the understanding of how FERC might interpret it down the line, would have said, you know, just to be sure, we're going to deny without prejudice, even though it's not been challenged yet. But let's just be careful, and let's deny without prejudice and not allow the applicant the opportunity to withdraw. FERC there says that if an applicant controls the request, and so I don't know that the state could have blocked a withdrawal. It wasn't the amendment to say that the state could grant even absent CEQA. I don't understand why that's needed. Your answer was, oh, yeah, they could just deny, which I think was the premise. So why did the legislature bother saying you could grant instead? I can't speak for the legislature. I don't know why the law was changed. But if there's a denial with prejudice, that is something appealable, correct? Any of it is appealable. Withdrawals are not appealable. No, they are. A failure to act, you could take the failure to act up to the board, ask for reconsideration, and it's not even just the applicant. It's any agreed party. And then that can also be challenged, you know. The board's decision on that is subject to a writ of mandate. So a failure, you know, if we, you know. If an applicant agrees, let's say the state has nothing to do with an applicant, agrees to withdraw and resubmit, that withdrawal is something that can be appealed by someone? If an applicant withdraws? Yes. Well, I don't think you could challenge the applicant's withdrawal. That was my question. So I think what would happen instead would, someone would challenge the state's failure to act. So I think you can't challenge the applicant's withdrawal, but you could say, hey, you could try to argue, I don't think this would be a successful argument, but you could try to argue to the state, even though they withdrew, you should have acted. But if it denies with prejudice, the state will then face, for sure, will face an appeal of that action, correct? If someone challenges. Yes. Then that's without prejudice. You had argued, and perhaps I'm, I misunderstand this, but I think you had argued that act also means something different from just grant or deny, that any action by the board is sufficient. Did you make that argument as well? So. Or are you not pursuing that argument? Well, I don't think that this court needs to resolve the meaning of act to decide this case, because I think the record shows that the state did not fail to act on any live request that was pending before the state for more than one year or more, even if the word act is only understood to mean decide and grant or deny. But it was another example where FERC was, you know, its bare assumption that act only means grant or deny. It was another example where it was interpreting a statute. It is not, you know, it's not, it doesn't administer in a way that it would, and not explain. In your case, does it mean, does to act mean something, can it mean something more than simply grant or deny? And I think it was a failure by FERC not to address that. But you believe that it's your position that it can mean something more than simply granting or denying. Isn't that an argument you made? Reading the plain text of the statute, the statute says act. But that was not, that argument is not shared by the board, correct? The board is not relying on that interpretation. That's correct. And that's why, you know, that's why you're not pressing it. I don't think that the court needs to resolve the matter. You have act to decide this case. Well, over your time at this point, thank you very much for the argument. We'll be sure to give you, just you, right, a few minutes for rebuttal. But let's hear now, is this Mr. Fish for FERC? Thank you for coming out. Of course. Good morning, Your Honors, and may it please the court, Jared Fish for the Federal Energy Regulatory Commission. I think what Ms. Gantenbean just said, that a failure to act could even be challenged, really gets to the heart of this case. If, under Section 3867 of the California Code of Regulations, a failure to act by an agency can be challenged, well then the agency must have had the power to act in the first place. And if that's true, then it was always within the board's power to deny or grant certification within a year, notwithstanding withdrawal. The issue in this case is not about what the board. I understood her answer to be they could have acted sooner than the withdrawal. And so someone could come to court and say, why didn't you act after nine months? You should have acted before they withdrew this thing. Perhaps, though even in the board's reply brief at page 23, they say FERC hasn't presented evidence that you couldn't challenge a failure to act. We were distinguishing the effects, and this gets to your question, Judge Watford, the effects of denial without prejudice versus withdrawal and resubmittal. There are real-world effects, and it explains why the state has an interest in the latter. A denial can be challenged in court. We cited several cases in our brief, the Alcoa decision from 2015, central Vermont, where the state board had denied, that was challenged in state court, and that denial was reversed. The board doesn't want that. They cite no instances where a withdrawal and resubmittal, i.e. state inaction, was challenged in court and that that was somehow overturned. But the most likely party to challenge it would presumably be them. So if that's, no? Not necessarily. That's the Hoopa Valley case. In Hoopa Valley, it was a third party, a Native American tribe, that challenged the withdrawal and resubmittal. It was not a party to the agreement to withdraw and resubmit, and this gets to a broader point. But just bear with me on this point, though. I mean, if a coercion has such an applicant on its own, then we presumably know that the applicant's not going to be the one. I'm not sure. I mean, what is the meaning of coercion? Here the state basically went to the applicants, at least in Hoopa River and Merced, and said, look, help us out. We don't want to comply with the one-year deadline in Section 401, and we also don't want to waive our power to issue a certification decision. So would you withdraw and resubmit your request? We think this is a means to get around the one-year deadline so we can have more time to conduct our own state processes. You know, if a regulatory agency comes to an applicant, and that agency has the power to veto a federal license, as the California Board does here through a certification denial, and it says, look, we'd really like you to do this for us, you know, the applicant is probably going to feel some force of coercion in that exchange. And, you know, the ultimate question here isn't whether there was an agreement, not even whether there was necessarily coordination. It was whether the state failed or refused to act. So we know from Section 401, Congress intended for the state to act, to decide a certification request within one year. So the board starts off on the back foot here, because they didn't decide the request within one year. Can I just go back to this coercion point, though? So is there anything in the record here where anyone said, offered a declaration, we were worried there was going to be some retribution, we were worried that we had to comply with what the state was saying? As far as I know, there's not, is there? No, not that I know of, Your Honor, but Section 401 is not focused on what the applicant is doing or not doing. It's focused on what the state is doing. But there was no application before the state at the time of the year, because the applicant had withdrawn it. So I think how does the state grant or deny when there's no application? And the applicant presumably is an intelligent actor, so they could just not withdraw it, right? Even if the state says it would be easier for us if you withdraw it, they could just not withdraw it and push the point, and the state either waives at that point or they grant or deny. Judge Friedland, we're not arguing that this decision was not voluntary. We're arguing that the state, by basically institutionalizing this practice, it's even in the regulations at Section 3836C, is creating an atmosphere where they intend for withdrawal and resubmittal to be the means to get them out of compliance one year. And really this case is no different from the New York 2 case from the Second Circuit. There, the applicant also agreed to extend the one-year deadline. They didn't have to. They voluntarily entered into an agreement to do that. Similar to in Hoopa Valley, the applicant agreed to the withdrawal and resubmittal scheme. But don't you agree the facts in this case are different from the facts in Hoopa Valley? There's no – they're not as strong. I don't think they're different in a materially meaningful way. Well, there was a written agreement there, correct? You don't have that in this case? Correct, Judge Edmund, but the written agreement doesn't make a difference for whether Congress's intent under Section 401 is vindicated. You don't need, even absent a written agreement, by engaging in this withdrawal and resubmittal scheme, a state can still avoid making any decision on a certification request for all time. And the one-year limit is vitiated, and that's because the only way that federal licensing can proceed is if one of two things happens, either the state grants certification or it waives its power to do so. If a state can avoid both of those, then it can always avoid the one-year deadline. How can a state tell someone they can't withdraw their application? That would be the natural effect of the test that you're arguing, that the state would say you can't withdraw. No, that's not quite right, Your Honor, because if the withdrawal is truly unilateral and not in the state's interest, here the evidence in the record points to the state. They say basically the quiet part out loud in each of the three cases. They say we want more than a year to decide these requests. If the evidence in the record shows that the applicant simply withdrew their request, and there's no evidence that the state did it for its purposes, but rather the applicant did it for its own. What's wrong with the state saying to the applicant, it's going to take us longer, we're going to have to deny this, and then the applicant can choose if they want the denial or if they want to withdraw. If these applicants chose to withdraw, I don't understand what the problem is. I think they could have chose to withdraw or accept the denial, but there are risks that come with a denial as well for the applicant. I don't know if that affects their investor decisions or what. That could also imperil their federal license, and that gets back to how the state is really trying to implant its own processes, which take longer than a year, onto the federal paradigm. If the applicant has reasons why it's better for them to withdraw than get a denial, is it not exactly why we should assume this is unilateral? No, Your Honor, because again the statute focuses on what the state does or doesn't do, and the state here demonstrated its failure or refusal to act by saying, we want more than a year for our own processes. But CEQA, the CEQA analysis, cannot be the reason why the state fails to comply with its federal obligations. The state can't legislate or write regulations in a way that allows them to evade the one-year deadline. And, you know, to the point that it just. I'll stop you there because I didn't understand the statutory scheme to say that. I thought that there really was no problem with the state doing what I proposed before, just deny without prejudice. Okay, you come back next year, deny without prejudice. I could just keep doing that forever as long as I take some action. So if I say, as the state, listen, we want, you know, this ridiculous amount of information from you. You haven't given it to us. It's going to take you ten years to give us that information. Keep denying without prejudice one day, one year, right? I thought there was nothing in the statute that precluded me as the state. I believe that's correct. There's nothing in the federal statute that precludes the state from doing that. But Congress, in the legislative history, and this is recounted in the New York 2 decision at 448, says that it expected applicants or third parties would have an opportunity to challenge an agency decision in state court. And a denial gives them the opportunity to do that. So maybe it's not perfect. Maybe the board could several times down the road deny without prejudice, you know, seriatim, until its own processes were complete, but at least there would be recourse. Right, but I just am fundamentally not in agreement with you when you keep saying the state was using this as a means to evade the one-year limit. It was not doing that because it had the option for every one of these to deny without prejudice, and it just was accepting that there was this other practice. That's why I was like, I don't even know why this other practice developed in the first place. But there was this other practice that allowed the applicants to go that route. It's now to a shock, you know, being penalized for that, and that seems to be quite unfair. But I would just go back to tell me if I'm wrong. I thought what the state was saying is not that we're trying to run some game on FERC, but rather we do have this requirement that we finish this environmental review. It requires you, the applicant, to give us certain information, and at each point the applicants have not provided the information that the state required in order to conduct that review. Is that right? Correct. The applicants have not provided the information, but for purposes of Section 401, the state hadn't acted on its request. The two are separate. One is the state's own processes. Maybe the applicant was at fault under CEQA. Maybe under state law the applicant couldn't do what he did. But Section 401 is indifferent to whatever state puts pressure on them. That's my final point, though, is that there was no incentive on this record for the state to not issue the denial without prejudice. I think the state was primarily indifferent as to whether there was a withdrawal and resubmission prejudice, because even if there was some state court challenge to denial without prejudice, the case would be thrown out in a second, wouldn't it? Because under state law, the board wasn't in a position to act on it. I don't know that that's true, Jeff. Perhaps that's a hypothetical. At least there would have been the opportunity for state court review. And the notion that this is really just about the applicants dragging their feet is, frankly, a bit disingenuous on the part of the board, because in those cases where the board was the lead agency for Southern California, Edison, PG&E, the board took much longer than a year. In Southern California, Edison, it took nearly 20 years. PG&E, it took nine years. And in the South Feather Water Agency decision from 2020, where the applicant was the lead agency, the applicant got the CEQA documents to the board, and the board still took, I think it was four years after that, to finally issue its decision on certification. And I think, you know, whatever the incentives the board may have had to engage in one practice rather than the other, the statutory text is clear. The board had to act, and here it failed to refuse to act by actively involving itself in this maneuver. And what distinguishes this case from those matters where there was no waiver, in the case of withdrawal and resubmittal, I'm thinking of the Village of Morrisville case, the KEI main case, and the Fourth Circuit's North Carolina decision, was that there was no evidence in the record there that the state was doing this to evade the one-year deadline. It was all about what the applicants were doing. So I know you're FERC and not EPA, but EPA has announced that it's going to reconsider its rule. Is it reconsidering this part of the rule? I can't speak to that. In the 2020 promulgated rule that the Supreme Court recently put back into place for the time being, EPA had said, you know, you can't engage in this withdrawal and resubmittal. It did say you could deny without prejudice for a lack of, you know, information. But either way, what we're talking about here, what New York, too, relied on, what Copa Valley relied on was the text of the statute. So we're not relying on, you know, what EPA has said in the rule. But if the statute's ambiguous, we might look at what EPA says, and it seems like EPA is maybe changing its mind about what it thinks this statute means. My understanding of the, when they announced the intent to do a new rule, is that they were going to reconsider this part, but I wasn't sure. I can say one of the major parts of the rule that they wanted to reconsider was the restricted scope of what a state could regulate. So previously under Supreme Court precedent, PUD number one, the state could regulate water quality writ large. The new rule said you can only regulate discharges. So that's a main point. I don't know, you know, what EPA is going to come up with in the end, but I think the pertinent point here is the only statement EPA made on this issue was from the 2010, that I know of anyway, and the petitioners have offered, is from a 2010 guidance document where it said it did not endorse this practice. Why? Because it delayed federal licensing, and that's in contravention of Congress's intent. And I think, just to reiterate, Congress was concerned here with protecting the regulatory structure. As New York 2 explains, it didn't want one state for a multi-state project to be able to hold up a permit or a license for that project. I was asking this partly because if the government, I mean, I know you're different agencies, but if the government is trying to reconsider this to allow this procedure again, maybe this case could be settled. And I'm wondering if the government actually has as strong a position as you're standing here arguing at this point, or if it's reconsidering this and maybe there's agreement that could be reached in this case. Well, we're not the agency that's writing the rules. And I don't think, you know, we are looking for guidance. This is something that was not particularly well litigated and decided until Hoopa Valley. But I don't think we're, you know, we are standing by our orders in this matter based on the text of Section 401 itself. Address that on the retroactivity issue because that's what bothers me. I just think all the players in this, like who cares if you have to grant or deny within the year. That's the rule and everybody knows it. And if you don't do one or the other, and if everyone knew that ahead of time, I don't think we would be spending all this time here debating this because the statements are just denied without prejudice. So going forward, I don't have a problem with the position, even if it's a hardline position that it did. I have a problem with trying to now go back and say, at a time when everybody thought that this was okay, that the consequences now that you've waived. And I'm very sympathetic to their argument on that point. I understand Judge Watford. And if we could, first of all, there's a temporal element because even before the Hoopa Valley decision, the California Board was implementing deny without prejudice going back to 1987 in the Keating case that petitioners counseled. On retroactivity, if we go through the analysis, the Chevron oil factors don't apply to determine whether we could have perspective-only application because this is a court's review of an agency's interpretation and application of a statute. But we don't have any deference to FERC on this statute, right? It's EPA's statute. So wouldn't it be a court interpretation that we need to give? And at that point, it seems like Chevron is the relevant framework. I don't think that's correct, Your Honor. As this court said, and I appreciate Judge Watford, you dissented from that decision, when the court is reviewing agency decisions, the Montgomery Ward test is the appropriate. But is that when Chevron deference is in play? I believe that was an ambiguous statute. And an agency that had the right to interpret it. An agency that had the right to interpret it. But Chevron oil, well, I think we win on the Chevron oil factors, but I still don't think it applies because here you have a situation that is consistent. Well, the Supreme Court in 1993 in its Harper decision said that once a federal court applies a rule of law to the parties before it, then all subsequent courts must apply that rule of law, whether the case was pending at the time, whether the facts underlying it occurred before that rule of law was first applied. But we aren't bound by HOOPA. Right, this court is not bound by HOOPA. But, respectfully, that's a different question. If this court disagrees with our interpretation of 401 and HOOPA Valley's interpretation of 401, then this court would just say, you got it wrong, there's a circuit split, we disagree, and we're going to apply the rule our own way. But if the court is agreeing with us and saying HOOPA Valley got it right and our interpretation of Section 401 is correct, well, that rule of law has already been applied. And the interests undergirding why retroactive application is mandated in that circumstance are that the Supreme Court said we want to avoid selective prospective application of the law going forward and we want to ensure that similarly situated parties are treated the same. And that would not occur if the court applied the rule prospectively only. In that hypothetical, wouldn't the relevant decision maker be us and not you? Because we don't defer to you. We've got to figure out what the statute means in this hypothetical. We can agree with you or not. If we agree with you, now we, for our circuit, announced a new interpretation of the statute. It happens to agree with yours, maybe. But at that point, is it the question of whether we can apply that retroactively? I don't think that there's a meaningful distinction, Your Honor. I mean, it would definitely encourage forum shopping. Petitioners could have filed suit in the D.C. circuit. In that circumstance, there would be no question that HOOPA Valley would be applied retroactively to them. I don't see why they should be able to avoid complying with the statute that has said what it's said since 1970 just because they chose to file suit in the Ninth Circuit rather than the D.C. circuit. Just a minute. Is it Mr. Schweiger? Is that how you say your name? We're going to give you your time, judges. If you're looking at the clock getting nervous, don't worry. You'll get your full five minutes. Thank you, Your Honor. Let me just try to frame it a little bit. I don't think what FERC is doing here is applying. Come up with a much more interpretation of the rule there. And so it is, it seems to me, kind of an agency elaboration on whatever the, you know, initially decreed baseline was, so you've kind of extended it through this case adjudication. And so it's just, it's an agency creation of this new rule that I think is quite different from the regime that existed back at the time when these folks were deciding whether to die without prejudice or to accept the withdrawal and resubmission. So it's that change, it seems to me, that's subject to retroactivity analysis. And it seems, by the Montgomery, I think Montgomery board, I can get through it, but I'm losing it. Am I wrong on that? I respectfully think you're wrong in two ways, Your Honor. So first, the prerequisite to applying the Montgomery board factors is that a change in the law has occurred. And here, let's take the Yuba-Bear example, where the first withdrawal and resubmittal occurred in 2013. Legislators can point to no FERC decisions before then, where we actually decided the waiver effect of withdrawal and resubmittal. They point to a couple of 1990s cases, Bearish and Sorenson and Ridgewood, Maine, where all the commission did was it said withdrawal and resubmittal occurred. It points to the 2005 case of Central Vermont, where we said we do not endorse withdrawal and resubmittal. We do not endorse this scheme that you've developed, scheme that you've developed with the state, because that thwarts Congress's intent on holding states to one year. And then they point to two cases in 2009, the Littleville decision and the Bradwood decision, where in Littleville all we said was withdrawal and resubmittal had occurred. And in Ridgewood, buried in a footnote, footnote 26, we said it occurred and the clock restarted. There's no indication that the issue of the waiver effect of withdrawal and resubmittal was ever raised, let alone decided. And so to say that a change in policy occurred, I don't think is fair. If the agency had never, in ignorance, and then you're going to correct me if I'm wrong, but the agency had never said that waiver had occurred on facts even remotely close to what we have here. Right? That's to me what's relevant, is that if they looked at what happened in the past, you all had never taken the position that what they did here was going to result in waiver. And in fact, if I'm remembering, in Hoopa Valley itself, on the extreme facts there, the agency found no waiver. So that was the regime before. Then after it's now too late for them to obviously go back and do anything different, you come up and say, oh, well, no, actually, you don't even need a formal agreement. There can just be this very kind of loosey-goosey coordination, and boy, that's waiver, and we're going to apply that to you, and they're saying, what are you talking about? That's completely different from what you were saying before, or not saying explicitly, but what you were allowing before. Well, I don't think that simply allowing something to happen where the issue is not actually raised constitutes a reasonable basis for detrimentally relying on something that, you know, was buried in the record as a Supreme Court sentence, Hoover-Cooper-Avell decision. You know, courts don't go searching around in the record for facts that could support reliance down the road and make that agency determination into policy or precedent. It simply, at least for Yuba-Bear, and arguably also for Merced, there simply wasn't a declaration by FERC. This was just something that was accepted. And so the facts here are even weaker than in Olivas-Mota, where at least there the agency had said before, we find that this action is a crime of moral turpitude, or it's not, and later said it is. And the only, the court still found, and I appreciate you were in dissent there, but the court still found that no change in the law occurred because the prior declaration on the very facts, and it was arguably a policy, was in an unpublished, non-presidential document. Here the facts are much weaker than that. All you have is FERC saying this thing occurred in the past and without any indication that it actually decided the issue on review here. So at most, I think the court could fairly say that the board took a gamble on hedged agency statements in central Vermont. We said, you know, we're wary of this. How do you apply to any instance where the board considered a withdrawal and resubmission to be a waiver? The FERC? Yeah. Sorry, not the board. FERC is what I meant. No, before Hoopa Valley, no, I cannot. But, you know, I think it's worth noting here that the board put into place without anything really to base it on. You had an EPA statement and a 2010 guidance document saying we don't endorse this practice. You had ambivalent FERC determinations. And yet the board went forward and put in place an institutionalized practice where it said we want to, you know, withdraw and resubmittal. It's a nice way for us to have more than the year that Congress provided us under Section 401 to make decisions. And its involvement in the process and its express intent to avoid the one-year deadline, that's not disputed here. If they said they wanted more than a year, reasonably reflects the board's own failure or refusal to act in the cases I'll review here. Okay. Very good. Thank you for your arguments. Thank you, Your Honors. I'll put five minutes on the policy you agreed about. Five minutes for Mr. Schweiger. And we're happy to hear from you now. Thank you, Your Honor. May it please the Court, Michael Schweiger, Counsel for Intervenor Respondents, Licensees, and These Consolidated Cases. I would note before I get started, Your Honor, that there is an audio problem. And so I'm getting an interruption in the audio, so I might have to ask to repeat. So on the issue of coercion and whether there's any evidence in the record of coercion, I think there is evidence in the record of coercion in the correspondence. And the board has conceded that the alternative to withdraw and refile was denial. Can you point to where in the record there's evidence of coercion? There's evidence that the alternative to withdraw and refile, Your Honor, would have been denial. Right, but that's the statute, and that's what everyone wants to have happen instead here. So why is that coercion? Because if the applicants had not withdrawn and refiled, their application could have been denied. So I'm suggesting that there was a coercive effect of the threat of denial, and that was real. The statute itself imposes that, right? The board has to grant or deny. The state has to grant or deny. And so it seems like if the applicants don't want a denial, then they do this withdrawal, but that makes it seem like it's just the applicant's choice. I mean, you can't get around the idea that you might be denied, right? So the applicants had the Hodgson's choice of being denied or extending the state's time to greater than one year. And I'm suggesting that there is certainly an implicit coercive element in that, but then the correspondence with the state also makes clear that if you don't withdraw and refile, we'll have to deny your application. And the denial would have consequences. Are there problems for the applicant from a denial? What follows from a denial without prejudice that some applicant might be trying to avoid? Well, Your Honor, you say denial without prejudice, but denial is denial no matter what label you put on it. And so then the applicants would have been in the position of deciding whether they had to appeal or not. If they didn't appeal, whether they might be stopped from appealing in the future, because on the CEQA issue, which is another point I'd like to address, but in general, and I think we said this in our brief, a regulated entity ignores the preference of their regulator at their peril. So it certainly would have put the applicants in a perhaps unfavorable position if they had just ignored what the state directed them to do. And it wasn't just a suggestion. It was a direction, as FERC found, and the court was deferred to FERC's factual findings, if supported by substantial evidence. And FERC did find that the state went way beyond suggesting procedural options to the licensees, but actually orchestrated the withdrawal and refile on the issue of CEQA. Can I ask you a question, counsel? You said that you were put to this Hobson's choice. Either, you know, it would be denied or you had to pursue the withdrawal. Have you ever argued at any place that at this juncture, your project should have been approved based on the record that was before the state board? Well, I guess I don't know that we argued. In submitting the application, each of the licensees made proposals in their application for the board's review and approval. So I guess the answer would be yes, but that question has been answered, because the state board in all three cases did issue 401 certifications, although we argued belatedly and after the fact, after waiver had occurred, but the state's already issued certifications for these projects. It seems like your position, well, it seems like those certifications may be not really of any value, though. I don't even know what they mean to certify something that wasn't pending. Well, if this court finds that waiver occurred, those certifications would have no legal effect. There's precedent for that, certainly, in FERC and court precedent. If this court finds that waiver did not occur, then those certifications are out there. And do they have conditions? Did they put conditions? Extensive conditions, Your Honor. Many, many conditions. Are those, I mean, is your preferred outcome, do you want those certifications? Absolutely not, Your Honor. Each of the licensees has appealed those certifications in state and in two cases federal court. So, those appeals are pending, depending on what happens here. And is your position that those certifications have no meaning at all, because it was after the waiver or withdrawal? That is our first position. Our second position is the state issued them, and we were under statutes of limitations to file timely appeals if we were going to challenge the merits of those. And then we did. But all turns on what the court decides here. But if you're arguing there that they have no meaning, it's a little odd for you to argue that we should rely on them here for some reason? Oh, no, we're not arguing there they have no meaning. We're arguing the waiver issue is not an issue. And the challenges, those challenges are to the conditions themselves, based on the merits, based on the state's authority and whether they're arbitrary and capricious. So, there's no inconsistency in our position. I do want to point out that as public entities, licensees are well aware of their obligation to comply with CEQA. Truly, we think that CEQA is a red herring here. And that's because the board had really hundreds of pages of FERC's environmental impact statements available to it at the time that it was going through this withdraw and refile. And the FERC environmental impact statements had extensive discussions of water quality. Mr. Swager, you are over your time. Is there a concluding thought you'd like to leave us with? The concluding thought, Your Honor, is that the threat of ecological harm that petitioners claim if waiver is declared here are overblown because FERC has said elsewhere and also in the record of these cases that it will consider the state's conditions as recommendations in FERC's public interest balancing under the Federal Power Act. And in the Dynamo Pond case, 966 F. 2nd of 1553 and 1554, this court rejected a complaint by the Water Board that an untimely certification meant that water quality would be unprotected. Thank you. Thank you for your argument. Your time has expired. Let's put three minutes on the clock for a little. Thank you, Your Honors. I think it's important to go back to the standard of review. FERC's orders must be supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept is adequate to support a conclusion. Here it is unreasonable to accept an applicant's failure to commence state law environmental review as constituting a failure by the state or a failure that the state agreed to facilitate. On State Farm, FERC's findings are counter to the evidence before the agency. Expressed intent was key in HOOPA. There was deliberate contractual idleness. Here FERC said the reason for delay was immaterial. That is arbitrary and capricious, especially when you compare it to what they did in their KEI Maine case and in their Vermont case on very similar emails. FERC found no waiver there. Why? FERC said it was material to look at the reasons. FERC said in those cases it was for the benefit of the applicant. The applicant was trying to get out of conditions it didn't like, and therefore the way the state did. It's for the benefit of the applicant, but these applicants don't want to do CEQA. And as we've discussed, the state board had no skin in the game. It was ready to deny the state has a right to require CEQA. And it was ready to deny for failure to do so. I don't know if the court has particular questions for me on topics, but I'm happy to entertain. I think we are all set. We really appreciate all counsel for your arguments today. It's a tricky set of issues, and we'll get on as soon as we can. The case just argued is submitted. And that concludes our argument calendar for this morning. The court is adjourned for the day. All rise. Court for this session stands adjourned.
judges: WATFORD, FRIEDLAND, Amon